IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JPMORGAN CHASE BANK, N.A.**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-00157** |
| | § | |
| **GEORGE DIXON, KRISTEN** | § | |
| **COLEMAN, SYDOW & ASSOCIATES,** | § | |
| **PLLC, DALLAS COUNTY SHERIFF'S** | § | |
| **DEPARTMENT, SHERIFF LUPE** | § | |
| **VALDEZ, OFFICER TIM DAVIS # 276,** | § | |
| **AND OFFICER J.T. WILSON #329**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants George Dixon, Kristen Coleman, and Sydow & Associates,

PLLC's  Motion to Transfer, filed February 18, 2011.  After careful consideration of the motion,

responses, record, and applicable law, the court determines that venue is proper in the Northern

District of Texas and that transfer is not warranted.  The court therefore **denies** Defendants George

Dixon, Kristen Coleman, and Sydow & Associates, PLLC's Motion to Transfer.

## I.      Factual and Procedural Background

Plaintiff JPMorgan Chase Bank, N.A. ("JPMC" or "Plaintiff") filed suit in this court on

January 25, 2011, demonstrating complete diversity of citizenship between the parties and that the

amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff brings claims for

wrongful execution, conspiracy to commit wrongful execution, suit for trespass to try title, and

declaratory judgment against Defendants for their execution on real property located in Dallas

County, Texas.

Defendants George Dixon ("Dixon"), Kristen Coleman ("Coleman"), and Sydow & Associates, PLLC ("Sydow") now request that the court transfer this action to the United States District Court for the Southern District of Texas, Galveston Division, for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 U.S.C. § 1404(a).

The following facts form the basis for this lawsuit. On September 25, 2008, the Director of the Office of Thrift Supervision declared Washington Mutual Bank ("WaMu") insolvent and named the Federal Deposit Insurance Corporation ("FDIC") as receiver of WaMu. On that same day, the FDIC and JPMC entered into a Purchase and Assumption Agreement, in which JPMC purchased some of WaMu's assets from the FDIC, including real property. On October 7, 2009, Dixon filed suit against WaMu in the 122nd Judicial District Court of Galveston County, Texas, alleging deceptive trade practices, slander of title and tortious interference claims. The lawsuit was assigned Cause No. 09-CV-1848 (the "Original Lawsuit"), and WaMu was the only defendant. On April 28, 2010, Dixon obtained a Default Judgment (the "Default Judgment") against WaMu, awarding him damages and releasing WaMu's lien on his house. The Default Judgment became final on May 28, 2010. Shortly thereafter, Dixon filed a First Amended Petition in Cause No. 09-CV-1848, which asserted claims against JPMC, foreclosure counsel, and the substitute trustee related to the June 1, 2010 foreclosure sale of his house. On August 27, 2010, Dixon filed a motion to sever his claims against WaMu from his new claims, and the state court judge granted Dixon's motion. Dixon's new claims against JPMC, foreclosure counsel, and the substitute trustee were assigned Cause No. 09-CV-1848-A ("Severed Lawsuit").

On November 17, 2010, JPMC filed a petition for mandamus requesting the state court of appeals to dismiss the Severed Lawsuit. The state appellate court granted JPMC's petition, and

Dixon's claims against JPMC in the 122nd Judicial District were dismissed. Before the petition was granted, the state court issued a writ of execution in the Original Lawsuit apparently at the request of Dixon's counsel. The only judgment debtor named in the writ of execution is WaMu. Dixon allegedly attempted to satisfy the writ against JPMC by sending a letter to the Dallas County Sheriff's Department identifying eleven properties supposedly owned by WaMu in Dallas County. JPMC contends that the properties are not owned by WaMu. On January 6, 2011, the Dallas County Sheriff's Department issued a Notice of Sheriff's Sale scheduling the eleven properties for sale on February 1, 2011. The Notice was issued by Sheriff Lupe Valdez, Officer Tim Davis #276, and Officer J.T. Wilson #329. Two of the properties listed on the Notice are allegedly commercial properties operated as JPMC banks, and the other nine properties are residential properties, three owned by JPMC and the remaining six owned by various individuals. After Dixon allegedly refused to cease and desist from the execution and cancel the sale, JPMC filed suit in this court.

JPMC asserts claims to property located in Dallas County, Texas. JPMC filed a separate suit in the Southern District of Texas, Galveston Division, against Dixon for related claims and concerning real property located in the Southern District of Texas. Defendants Dixon, Coleman and Sydow (collectively, the "Dixon Defendants") argue that transfer of venue to the Southern District of Texas, Galveston Division, is proper because (1) the dispute stems from occurrences and transactions in Galveston, Texas, that are the subject of the Southern District lawsuit and (2) public and private interest factors weigh in favor of transferring venue. Defendants Dallas County Sheriff's Department, Sheriff Lupe Valdez, Officer Tim Davis #276, and Officer J.T. Wilson #329 (collectively, the "Dallas County Defendants") oppose the transfer. The Dallas County Defendants contend that venue is proper in Dallas County because (1) the execution of the property occurred

in Dallas County; (2) the public and private interest factors weigh against transferring venue; and (3) the Dixon Defendants failed to comply with local rule 7.1(h). Additionally, JPMC argues that venue is mandatory in the Northern District of Texas under the common law "local action" doctrine. In the alternative, JPMC contends that the motion should be denied because the Dixon Defendants failed to demonstrate that the Southern District is a more convenient forum.

## II.     Applicable Standard for a Section 1404(a) Transfer

With respect to § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought."  28 U.S.C. § 1404(a).  In applying § 1404(a), a district court must first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)).  Once this initial determination is made, a district court

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice."  The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Volkswagen I*, 371 F.3d at 203 (citations omitted).

Transfer of venue under § 1404(a) is at the discretion of the court, considering "[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847 at 370 (1986)).

A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). A "[p]laintiff's choice of forum is clearly a factor to be considered but in and of itself is neither conclusive nor determinative." *In re Horseshoe Entm't,* 337 F.3d at 434. The moving party, however, must "demonstrate[] that the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 315.

III.    **Analysis**

This action could have originally been filed in the Southern District of Texas because the Dixon Defendants all reside in the Southern District. *See* 28 U.S.C. § 1391(a)(1). Having determined that this action could have originally been filed in the Southern District of Texas, the court now considers the eight factors to determine whether it should be transferred to that district.

A.    **The Four Private Factors**

With respect to the first factor, relative ease of access to sources of proof, the Dixon Defendants argue that sources of proof including "files and key witnesses used in obtaining the default judgment, as well as Dixon's homestead property that precipitated this entire dispute" are located in the Southern District of Texas. Def.'s Mot. at 4-5. Plaintiff contends that "sources of

proof includ[ing] documents and Dallas County land records demonstrating JPMC's title to property" are located in the Northern District of Texas. Pl.'s Resp. at 8-9. This factor assumes much less importance in the era of electronic documents: both Plaintiff and the Dixon Defendants' sources of proof are easily accessible electronically. Furthermore, sources of proof are located both in the Northern and Southern District of Texas, and therefore do not weigh strongly in favor or against this factor. Accordingly, this factor is neutral.

With respect to the second private factor, availability of compulsory process to secure the attendance of witnesses, the parties have not identified any unwilling witnesses who would be subject to compulsory process in the Southern District of Texas, but not in the Northern District of Texas, or vice versa. Moreover, any witness who resides beyond the subpoena power of either court can be required to provide deposition testimony, which can be used by either party at trial because of the unavailability of a witness. This factor is therefore neutral.

With respect to the third factor, cost of attendance for willing witnesses, it is likely that the Dallas County Defendants and Dallas County representatives who are familiar with the Property will be called to testify at trial. If the venue is transferred to the Southern District of Texas, both of these groups will have to travel a distance farther than 100 miles, which increases their inconvenience. *Volkswagen II*, 545 F.3d at 318 (citing *Volkswagen I*, 371 F.3d at 204-05) ("When the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). Although Sydow is located in the Southern District of Texas, the residency of Defendants' counsel is "irrelevant and improper for consideration in determining the

question of transfer of venue." *In re Horseshoe Entm't*, 337 F.3d at 434. For these reasons, this factor weighs against a transfer of venue.

The final private factor addresses all other practical problems that make trial of a case easy, expeditious, and inexpensive. On August 31, 2010, JPMC filed a related lawsuit in the Southern District of Texas against Dixon. The Dixon Defendants argues that one of the underlying issues is the enforceability of Dixon's default judgment against JPMC, and therefore it is more expeditious to consolidate both cases rather than litigate the dispute separately. The lawsuit in the Southern District of Texas, however, concerned title to real property located in the Southern District. In this case, the dispute concerns title to real property located in the Northern District of Texas. It is more practical and easier to conduct a lawsuit concerning property located in Dallas County in the Northern District of Texas than in the Southern District of Texas. Consequently, this factor weighs against transfer.

### B.      The Four Public Factors

The first public factor concerns administrative difficulties flowing from court congestion. The Dixon Defendants argue that "[i]t does not serve the interest of judicial efficiency for JPMC to file suit in every Texas County in which Dixon seeks to execute on property in satisfaction of his default judgment against WaMu." Def.'s Mot. at 2. The Dixon Defendants, however, do not raise specific problems or difficulties arising from court congestion and merely make a conclusory argument. Moreover, it is appropriate for JPMC to file suit in whichever district the subject of the property resides. Accordingly, this factor is neutral.

With respect to the second factor, local interest in having localized interests decided at home, the Dixon Defendants argue that transfer "will serve the local interest in adjudicating localized

controversies and will avoid the unfairness of burdening citizens of the Dallas area with jury duty in a case that stems from activities in Galveston. Texas." Pl.'s Mot. at 3. Plaintiff contends that the suit concerns a dispute over title to real property located exclusively in Dallas County and, therefore, favors venue in the Northern District. The court agrees with Plaintiff. Residents of the Northern District of Texas have a clear and significant interest in adjudicating a dispute over property located in Dallas County. Furthermore, residents of the Southern District do not have a significant interest in the outcome of a dispute concerning title to property located in Dallas County. Therefore, this factor weighs against transfer.

With respect to the third and fourth factors, familiarity with governing law and avoidance of unnecessary conflict of laws, the court determines that these factors are inapplicable or neutral. The parties have not presented any arguments over whether one forum is more familiar with the governing law or whether any conflict of laws is present. Consequently, this factor is either inapplicable or neutral.

C.      **Combined Assessment of the Private and Public Factors**

With respect to the private factors, two factors weigh against transfer, and two are neutral. As to the public factors, one factor weighs against transfer, and three are neutral. The Dixon Defendants have failed to show that the Southern District is clearly more convenient than the venue chosen by Plaintiff and therefore have failed to meet their burden on this motion. Consequently, this court concludes that, for the convenience of the parties and witnesses and in the interest of justice, the forum for this action should remain in the Northern District of Texas.

## IV.    Conclusion

For the reasons herein stated, the court determines that the Dixon Defendants have failed to meet their burden of demonstrating that a transfer of venue is clearly more convenient for the parties and witnesses and in the interests of justice.  Accordingly, the court **denies** Defendants George Dixon, Kristen Coleman, and Sydow & Associates, PLLC's Motion to Transfer.

**It is so ordered** this 24th day of June, 2011.

Sam A. Lindsay
United States District Judge